[No. 15131. Department Two. July 8, 1919.]

DOROTHY PIERCE et al., Respondents, v. GLOBE & RUTGERS FIRE INSURANCE COMPANY, Appellant.[1]

INSURANCE (132, 188)—PROOFS OF LOSS—QUESTIONS FOR JURY. The failure of the insured, without reasonable cause, to appear for examination under oath, as required by a fire insurance policy, is a question for the jury, where it appears that, before the time appointed, he was arrested for arson at the instance of a representative of the company and committed to jail and was unable to obtain his release on bail until two or three days after the day set, and no further demand and no attempt was made to examine him while in jail.

SAME (132)—STATEMENTS OF LOSS—PLACE FOR EXAMINATION. The proper place for an examination of the insured is where the loss occurred, and the company has no right to demand that it take place elsewhere.

SAME (120)—RISKS—VALUE OF PROPERTY. Where buildings are totally destroyed by fire, any recovery must be for the amount stated in the policy, under Rem. Code, § 6059-105½, providing that the same shall be conclusive as to the value.

SAME (189)—VALUE OF PROPERTY DESTROYED—INSTRUCTIONS. An instruction relating to the amount of the recovery for buildings totally destroyed, to the effect that the jury shall not consider the evidence at all as to the value of the building, unless the buildings were destroyed because of criminal fault of the insured, is not misleading, where other instructions fully advised the jury that false swearing even as to the value of the buildings would defeat recovery under the policy.

Appeal from a judgment of the superior court for King county, Tallman, J., entered April 18, 1918, upon

[1]Reported in 182 Pac. 586.

the verdict of a jury rendered in favor of the plaintiffs, in an action on a fire insurance policy. Affirmed.

*H. T. Granger,* for appellant.

*Geo. Olson, Jay C. Allen,* and *W. R. Bell,* for respondents.

PARKER, J. — This action was commenced in the superior court for King county by the plaintiff, Dorothy Pierce, upon a fire insurance policy issued by the defendant insurance company to J. C. Lewis, providing for the payment to Mrs. Pierce and Lewis for the loss of the property as their respective interests may appear. The policy was so issued in recognition of the fact that Lewis held possession of the property under a contract of sale from Mrs. Pierce, she retaining title thereto to secure the payment of the balance due her from Lewis upon the purchase price. Lewis, being made a defendant in the action, filed a cross-complaint, setting up his claim of interest. While, by the pleadings, there seems to have been a slight disagreement between Mrs. Pierce and Lewis as to the amount of her interest represented by the balance due her upon the purchase price of the property, the controversy here has to do only with the question of the liability of the insurance company under the policy as such liability may be affected by the acts of Lewis at the time of the fire causing the loss, and his alleged failure to thereafter comply with the terms of the policy. Trial upon the merits in the superior court sitting with a jury resulted in verdict and judgment in favor of Mrs. Pierce and Lewis, awarding them recovery in the full amount of the policy, from which the insurance company has appealed to this court.

The policy here in question is one of two concurrent policies of $2,500 each. The property insured was a

frame store building and a frame warehouse building, used by Lewis in conducting a general store, which he also held under contract of sale from Mrs. Pierce, together with the buildings, situated in the town of Pacific City, in King county. Both buildings were entirely destroyed by fire on March 8, 1917, while these policies were in force. We are here concerned only with the affirmative defenses made by the insurance company that Lewis purposely caused the fire to occur with intent to defraud the insurance companies, that he made false statements under oath in making his proof of loss such as to prevent his recovery under the terms of the policy, and that he failed to submit to examination under oath touching the loss upon demand therefor, as provided by the terms of the policy, precluding recovery. Other facts will be noticed as they may become necessary in our discussion of the several contentions made by counsel.

It is contended by counsel for the insurance company that the trial court erred in refusing to take the case from the jury, in compliance with motions timely made in that behalf, and decide, as a matter of law, that there could be no recovery upon the policy. It is argued that the evidence relating to the alleged intentional causing of the fire by Lewis, and also the evidence relating to alleged false statements made by him under oath in the making of his proof of loss, was such as to call for the deciding of the case against the insured by the court as a matter of law. Our review of the evidence quite convinces us that these were questions of fact calling for decision by the jury, rather than by the court as matters of law. The evidence touching these questions was conflicting. We think this branch of the case does not call for further discussion.

It is further contended that the trial court should have taken the case from the jury and decided, as a matter of law, that there could be no recovery upon the policy, because Lewis failed to submit to examination under oath upon demand therefor, made by a representative of the insurance company under the following provisions of the policy:

"The insured, as often as required, shall . . . submit to examinations under oath by any person named by this company, and subscribe the same.

"No suit or action on this policy for the recovery of any claim, shall be sustainable in any court of law or equity until after full compliance by the insured with all the foregoing requirements, . . ."

On May 23, 1917, a representative of the insurance company sent by mail to Lewis at Pacific City the following notice and demand:

"You are hereby notified to appear at 2:30 p. m. on Monday, the 28th inst., before S. H. Steele, a Notary Public, Room 1115 Alaska Building, Seattle, Washington, for examination under oath as provided for in the conditions of said policy."

This notice was received by Lewis at Pacific City on the following day. Prior to that time, investigation had been instituted and made by the public authorities, looking to the prosecution of Lewis criminally for causing the burning of the property with intent to defraud the insurance companies. We think the jury might well have believed from the evidence that this investigation was at the instance of a representative of this and other insurance companies. A few days after receiving the notice, Lewis learned that steps were being taken looking to his prosecution for causing the fire to defraud the insurance companies. During the forenoon of May 28, he went to Seattle, which is some twenty-five miles distant from

Pacific City, going direct to the office of the prosecuting attorney, intending to go to Mr. Steele's office in the afternoon at 2:30 in response to the notice for him to appear there at that time for examination. Soon after arriving at the prosecuting attorney's office, he was questioned at length touching the fire and the property, in the presence of a deputy prosecuting attorney and one Groce, the latter, as the jury might well believe, being a representative of this and other interested insurance companies. Groce made notes of what Lewis then said in answer to questions propounded to him. Immediately following this questioning of Lewis, a deputy sheriff was called into the office, and Lewis was arrested under a warrant which had been theretofore issued. We assume that the warrant was issued upon a charge of arson in connection with the fire, though the record before us is not specific as to the exact nature of the charge. He claims he was not able to procure his release upon bail for two or three days following his arrest, and hence was obliged to remain in jail and was prevented from going to Steele's office on the afternoon of May 28 for examination in compliance with the notice from the insurance company.

The place where Lewis was confined in jail was but a few blocks from Steele's office in Seattle; and we think the jury might well have believed from the evidence that the representative of the company who was to conduct the examination of Lewis in Steele's office knew at the time that Lewis was arrested and could be found at the jail. No effort was made to see Lewis and examine him there. No further demand was made upon Lewis by any one that he submit to examination. He was released from jail upon bail furnished a few days after his arrest, and he thereafter made no further effort to present himself at Steele's office for

examination. The trial court submitted to the jury the question of whether or not Lewis failed, without reasonable cause, to submit himself for examination, and the effect of the jury's verdict was that he did not so fail. We are of the opinion that, under the circumstances, it could not be decided, as a matter of law, that Lewis failed, without reasonable cause, to appear at Steele's office and submit to examination, as demanded by the insurance company, and that the trial court did not err to the prejudice of the insurance company in leaving that question for the jury to decide. This conclusion finds support in what may be regarded as the leading decision upon that subject, in *Phillips v. Protection Ins. Co.,* 14 Mo. 221. It is further argued in this connection that Lewis should have gone to Steele's office and offered to submit to examination after he was released from jail. But we are equally clear that it could not be so decided, as a matter of law, especially in view of the fact that the place of examination was some twenty-five miles from the place of the fire and Lewis' residence. The law touching Lewis' obligation to appear at some place other than Pacific City for examination is as stated in 14 R. C. L. 1342, as follows:

"The place where the loss occurs is the proper place for the examination, and neither the insurance company nor the insured has the right to demand that it shall take place elsewhere."

It is contended that the trial court erred to the prejudice of the insurance company in concluding one of its instructions to the jury in language as follows:

"So unless you find that the fire occurred or that the buildings were destroyed because of criminal fault on the part of the defendant Lewis, you should not consider the evidence at all as to the value of the buildings."

We have noticed that the buildings were totally destroyed by the fire. It follows, therefore, that the amount of the recovery under the policy, if any recovery could be had at all, would be the amount stated in the policy, as provided in § 6059-105½, Rem. Code, as follows:

"Whenever . . . the property insured shall be wholly destroyed, without criminal fault on the part of the insured, or his assigns, the amount of insurance written in such policy shall be taken conclusively to be the true value of the property when insured, and the true amount of the loss and measure of damages when destroyed. . . ."

It was in stating the law as embodied in this section, and the rights of the insured thereunder, in so far as the amount of their recovery alone was concerned, if they be awarded recovery, that the court used the above quoted language. The argument of counsel is that this quoted language of the instruction in effect advised the jury not to consider the evidence of the value of the buildings as bearing upon the question of Lewis having sworn falsely in his proof of loss touching the value of the buildings. It seems to us the question of the value of the buildings was only incidental to the question of willful over-insurance on the part of Lewis, which in turn was only incidental to the question of his having purposely caused the fire with intent to defraud the insurance company. Reading the above quoted language of the instruction complained of without reference to the whole of that instruction, of which it was a part, and without reference to the other instructions, it may be subject to some criticism, but the whole of that particular instruction related alone to the amount the insured were entitled to recover, if any recovery was to be awarded them; and there were other instructions fully and plainly

advising the jury that false swearing on the part of Lewis in his proof of loss, even as to the value of the buildings, would defeat recovery under the policy. Viewing the instructions as a whole, we think the jury was not misled to the prejudice of the insurance company by the court's language above quoted.

Other claims of error, we think, are so plainly without merit as not to require further discussion.

The judgment is affirmed.

HOLCOMB, C. J., MOUNT, and FULLERTON, JJ., concur.